IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CITIBANK, N.A., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 00169 |
| | ) | |
| AUTOMART INTERNATIONAL, INC., | ) | |
| CHERNG-CHYANG LIOU, and BEE | ) | Judge Ronald A. Guzmán |
| JUNE CHENG, | ) | |
|     Defendants, | ) | |
| | ) | |
| | ) | |
| AUTOMART INTERNATIONAL, INC., | ) | |
| and BEE JUNE CHENG, | ) | |
|     Third Party Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| MOHAMMAD A. ANJUM, and | ) | |
| AUTOMART NATIONWIDE, INC., | ) | |
|     Third Party Defendants. | ) | |

## ORDER

For the reasons stated below, Defendants' motion to dismiss the third-party complaint [22] is granted in part and denied in part.

## STATEMENT

On March 13, 2006, Citibank and Automart entered into a loan agreement and note pursuant to which Automart borrowed $1.5 million. (Compl., Dkt. # 1, ¶ 7.) As security for the loan, Automart executed a Commercial Security Agreement, encumbering certain collateral. (*Id*. ¶ 9.) On July 11, 2007, the parties entered into another loan agreement under which Citibank agreed to continue to extend the loan on the terms and conditions stated, and Automart executed another note. Automart also reaffirmed its obligations under the Commercial Security Agreement. (*Id*. ¶¶ 10-12.) The loan was again modified in April 2010 with Automart executing another note in the amount of

$1 million and expressly acknowledging that the note remained secured by the Commercial Security Agreement. (*Id.* ¶¶ 13, 14.)

In addition to the loan documents discussed above, Cherng-Chyang Liou and Bee June Cheng executed commercial guaranties guaranteeing full and punctual payment by Automart of its obligations to Citibank. (*Id.* ¶¶ 15, 16.) Automart defaulted under the terms of the loan documents and in an October 28, 2013 letter, Citibank notified Automart of the default and accelerated the amount due. (*Id.* ¶ 19.) On November 21, 2013, counsel for Citibank notified Automart and Liou and Cheng of the default and stated that the indebtedness was fully due and payable. (*Id.* ¶ 20.) As of December 10, 2013, the unpaid principal balance of the loan was $520,000.00 with interest accruing at the rate of approximately $58.00 a day. (*Id.* ¶ 21.) Citibank alleges breach of the note and the loan agreement against Automart (Count I) and breaches of the guaranties against Liou and Cheng (Counts II and III).

Automart and Cheng then filed a third-party complaint against Mohammed A. Anjum and Automart Nationwide, Inc. ("Nationwide") alleging fraud and breach of contract. According to the third-party complaint, Cheng and Liou owned Automart and operated it together. (3d Party Compl., Dkt. # 16, ¶ 6.) In early 2013, Anjum approached Cheng about purchasing Automart. (*Id.* ¶ 8.) After several conversations, Automart agreed to sell substantially all of its assets to Anjum for $200,000.00 and the assumption by Anjum of Automart's trade debt, including the Citibank loan. (*Id.*) At the time of their agreement, the parties were not represented by counsel and did not put the terms of their agreement in writing. (*Id.*) The parties agreed to a closing date of August 1, 2013, but on that morning, Cheng called Anjum to say that she no longer wanted to sell Automart. (*Id.* ¶ 9.) Anjum told Cheng that it was too late because his lawyers had already drawn up the papers

and he had already wired the money to Citibank to pay off the loan. (*Id*.) Just before lunch on August 1, 2013, Automart's bookkeeper showed Cheng and Liou a printout of the Citibank loan account, which showed a zero balance on the loan. (*Id*. ¶ 10.) Anjum met Cheng and Liou in the afternoon of August 1, 2013 and had them sign certain documents, telling them that they reflected the terms of their sale agreement. (*Id*. ¶ 11.) Anjum did not give them a complete copy of the papers documenting the sale agreement or copies of the pages they had signed. (*Id.*) After that, Nationwide took over all assets and operations of Automart and continues to operate the business. (*Id*. ¶ 12.) In September 2013, a Citibank lender named Scott told Cheng that Anjum had not paid off the loan, so she gave Scott's phone number to Anjum. (*Id*. ¶ 14.) When Cheng asked Anjum why he had not yet paid off the loan, Anjum told her that Citibank had rejected his payment, that he needed a payoff letter from Cheng and Liou and the funds to pay off the loan were in escrow. (*Id.* ¶ 15.) Cheng and Liou supplied Anjum with a copy of a payoff letter but Anjum still did not pay off the loan. (*Id*. ¶¶ 16, 17.) The parties' lawyers exchanged letters regarding the terms of the sale agreement and Anjum's lawyer indicated at one point that the purchase price for Automart's assets was either $200,000.00 or a payoff of the Citibank loan, but not both. (*Id*. ¶ 20.) Subsequently, Anjum told Cheng that he had agreed to pay off the loan but that he was not going to because she had hired a lawyer. (*Id*. ¶ 21.) To date, Anjum and Nationwide, a corporation Anjum set up to purchase the assets of Automart, have failed to pay off the Citibank loan. (Id. ¶¶ 3, 25.) As noted, Automart and Cheng sue for fraud and breach of contract.

Anjum and Nationwide move to dismiss the third-party complaint on the grounds that the Court lacks subject matter jurisdiction and the third-party complaint fails to state a claim. Defendants first cite to Rule 17 and argue that Cheng lacks standing to assert the rights of Automart.

3

While Defendants' argument is not entirely clear, they contend that because Cheng lacks a direct personal injury independent of the derivative injury of a shareholder generally, she lacks standing to sue. The Seventh Circuit has described "Rule 17's real-party-in-interest requirement as essentially a codification of this nonconstitutional, prudential limitation on standing." *Rawoof v. Texor Petrol. Co, Inc.*, 521 F.3d 750, 757 (7th Cir. 2008). Thus, contrary to Defendants' assertion, a purported Rule 17 violation does not go to this Court's subject matter jurisdiction. *Burns v. Vill. of Crestwood*, No. 12 C 484, 2013 WL 352784, at *2 n.1 (N.D. Ill. Jan. 29, 2013) ("Because it is not a constitutional requirement, the real party in interest doctrine does not act as a limitation on the subject matter jurisdiction of the federal courts . . . ."). In any event, with respect to the fraud claim, Cheng is not suing to enforce the rights of Automart; Cheng and Automart are both third-party plaintiffs and sue on their own behalfs. To the extent this argument is directed to the breach of contract claim, which alleges that Anjum and Nationwide breached the sale agreement by failing to pay off certain trade vendors (not including Citibank) listed in Exhibit H of the sale agreement, both Cheng and Automart are signatories to the sale agreement. At this stage of the litigation, based on the allegations in the third-party complaint, both Automart and Cheng have standing to pursue this claim. Accordingly, the Court denies this basis for dismissal.

Defendants also assert that Plaintiffs' fraud count fails to state a claim. "In Illinois, fraud in the inducement is a form of common-law fraud. . . . [t]he elements of [which] are: 1) a false statement of material fact; 2) knowledge or belief by the maker that the statement was false; 3) an intent to induce reliance on the statement; 4) reasonable reliance upon the truth of the statement; and 5) damages resulting from that reliance." *Coexist Found. Inc. v. Fehrenbacher*, No. 11 C 6279, 2014 WL 1287880, at *3 (N.D. Ill. Mar. 28, 2014). Defendants assert that Plaintiffs plead

4

themselves out of court when they allege that it was Automart's bookkeeper who stated to Cheng and Liou on the morning of the closing that a printout of the Citibank loan account showed a zero balance. According to Defendants, Plaintiffs cannot demonstrate reliance on Anjum's alleged misrepresentations because they allege they relied on their own agent. Reasonable reliance is usually a question of fact, but can be determined as a matter of law if no trier of fact could find it reasonable. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). The Court cannot conclude based on the allegations that no trier of fact could find it reasonable to have relied on Anjum's purported misrepresentations. "Whether [Plaintiffs'] reliance was reasonable is a question of fact best addressed by an appropriate finder of fact upon a more fully-developed record." *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 944 (N.D. Ill. Mar. 27, 2013). The Court denies this ground for dismissing the fraud claim.

Defendants next contend that the fraud allegations fail to comply with the particularity element of Rule 9(b), which requires that allegations of fraud include "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 507 (7th Cir. 2007). Plaintiffs allege in part that: after several conversations with Anjum in early 2013, Automart agreed to sell substantially all of its assets to him for $200,000.00 plus the assumption of all of Automart's trade liabilities, including the Citibank loan; on the morning of August 1, 2013, when Cheng told Anjum she did not want to proceed with the sale, Anjum responded that he had already wired the money to the bank; and, when Cheng asked Anjum in September 2013 why he had not yet paid the Citibank loan, he stated he needed a payoff letter and the money was in escrow pending the payoff letter. (3d Party Compl., Dkt. # 16, ¶¶ 8, 9, 15.) The

5

Court finds these allegations satisfy Rule 9(b).

Defendants argue that Plaintiffs' breach of contract claim, which alleges that Anjum and Nationwide breached the sale agreement by failing to pay trade debt, not including the Citibank loan, demonstrates that Plaintiffs did not believe that payment of the Citibank loan was part of their agreement and thus, the fraud claim must fail. The Court is not persuaded. Plaintiffs' allegation that Defendants failed to pay off trade debt as required by the sale agreement does not necessarily undermine their claim that Anjum fraudulently induced them into signing the agreement.

To the extent Defendants assert that Plaintiffs have failed to provide documentation or facts to support the alleged misrepresentation that "the Citibank loan would be paid upon receiving a pay-off letter," the Court disagrees. Plaintiffs need not provide proof at the pleading stage and, as already noted, they have alleged sufficient facts in support of their fraud claim.

With respect to the breach of contract claim, Defendants argue that the allegations that certain trade vendors have not been paid is false. Obviously, this is not an issue that is appropriate to resolve at the motion to dismiss stage. Therefore, the motion to dismiss the breach of contract claim is denied.

Finally, Defendants contend that Anjum is not personally liable and should be dismissed because Nationwide was a disclosed principal and Anjum never agreed to be personally liable. While Anjum is not a signatory to the sale agreement and thus cannot be personally liable for its breach, he can be held liable for fraudulent misrepresentations he made on Nationwide's behalf. *Wallace Computer Servs., Inc. v. David A. Noyes & Co.*, No. 93 C 6005, 1996 WL 131750, at *3 (N.D. Ill. Mar. 7, 1996) (a corporate officer "is individually liable for fraudulent acts of his own or in which he participates") (citation and internal quotation marks omitted). Anjum is dismissed from

6

the breach of contract claim but not the fraud claim.

For the reasons stated above, Defendants' motion to dismiss the third-party complaint [22] is granted in part and denied in part. It is granted to the extent that Anjum is dismissed as a defendant in the breach of contract count but denied as to the remainder of the motion.

**Date**: June 11, 2014

_____
**Ronald A. Guzmán
United States District Judge**